Bergan, J. (dissenting).
For more than 20 years the State of New York has consistently, and without any exception, divided city school districts into two classes: one comprised of cities over 125,000 inhabitants; the other of cities of less than 125,000. The policy is laid down in article 52 of the Education Law, entitled “ City School Districts of Cities with One Hundred Twenty-Five Thousand Inhabitants or More ’ ’; and article 51, entitled “ City School Districts of Cities with Less than One Hundred Twenty-five Thousand Inhabitants”.
It is not disputed that the 1970 official Federal census shows the City of Albany to have a population of less than 125,000, and that in 1950 when the two classifications of city school districts was first established, and in 1970, before the last census was completed, and at the time when chapters 462 and 492 of the Laws of that year were enacted, the latest official census of 1960 continued to show Albany at above 125,000 population; and accordingly not then eligible for classification within article 51.
The regulations affecting each of the two classes of school *217 districts differ in several respects, especially in relation to the time and manner of selection of school boards. The critical issue in this case is which article of the statute controls when a city population drops from over 125,000 to less than that number. More specifically, the question is whether a change occurs automatically on the certification of a new official census.
Article 52, dealing with school districts in cities of more than 125,000 population, specifies each city in that class by name. All of them, including Albany, at the time of enactment of the article in 1950 had over 125,000 inhabitants. But article 51, dealing with cities of less than that number, states in broad terms, and without specifying any of them by name, that it applies to ‘[1] each school district ” which now (1950) is, “ or hereafter becomes ”, a city school district of a city ‘ ‘ with less than one hundred and twenty-five thousand inhabitants ”. This becomes operative according to “the latest” Federal census (Education Law, § 2501).
On the face of it this must mean that a city falling by reduced population into the less than 125,000 group is thereupon governed by that article even though it had previously by name, and correctly by population, been classified and governed by an article expressly relating to cities of over 125,000. The words “ hereafter becomes ” according to “ the latest ” Federal census clearly serve that purpose.
It is suggested that the only meaning which may be attributed reasonably to the words of section 2501: ‘ ‘ each school district of a city which now [1950] is, or hereafter becomes, a city school district of a city with less than one hundred twenty-five thousand inhabitants ’ ’ is that its application is limited to districts “ then ” in 1950 in that class “ and to each school district of any subsequently incorporated city ”. The general language of the section, of course, embraces districts of subsequently created cities; but the specific expression ‘ ‘ hereafter becomes * * * less than one hundred twenty-five thousand * * * according to the latest federal census ’ ’ can have no reference to a newly incorporated city which must have been evolved from a previously existing village in which the exact latest census population of above or below 125,000 could be of no critical importance.
On the other hand it must have been intended to relate to a school district in a city of over 125,000 which after 1950 and *218 “ according to the latest federal census ” actually “ becomes ” that size. Nor can this meaning be excluded. The statutory words clearly have that literal sense. It is not possible for a court to say with assurance that no drop in city population had been anticipated. Indeed the erosion of the core sections of older cities in a population flight to the suburbs has been observed for a long time.
It follows from this language that an automatic shift from article 52 to article 51 coverage occurs on a drop below 125,000 in official census population, since this " becomes ’ ’ the classification of the city by numbers "according to the latest federal census If there were otherwise doubt about this transition because Albany still was left by name in article 52 it would be resolved by the language of chapter 492 of the Laws of 1970 which is the only relevant statutory provision dealing with a transition due to population change. The statute suspends the effect that would be consequent on a change in population if a reduction under 125,000 be shown by the 1970 census, until July 1, 1971.
This necessarily implies that without such a suspension the transition from one classification to the other would have occurred immediately on the official certification of the ‘ ‘ latest federal census ” showing the decrease in population. The purpose of chapter 492 was to postpone such a change. The words of that statute say just that.
It expressly deals with a city which, as in the case of Albany, had 125,000 inhabitants according to the census of 1960 and which has less than 125,000 according to the census of 1970. The school district of such a city " shall continue to be * * * governed by all of the provisions of article fifty-two ” until July 1, 1971. The statute was enacted before the 1970 census was promulgated and it was intended to postpone “ until ” July 1,1971 the change which would otherwise occur if the 1970 census when completed and certified demonstrated a lower population.
The July 1 cut-off date necessarily means that after that time the district no longer ‘ ‘ continues ” to be governed by article 52; but that the broad provisions of section 2501 affecting every city district in the State which ‘ ‘ hereafter becomes ’ ’ one of a lower population class according to “ the latest ” Federal census are applicable.
*219 It is true that chapter 462 of the Laws of 1970, enacted the same year, dealt expressly with the school district of the City of Albany and made many changes in statutory applicability. But all of these changes were addressed to specific sections in article 52 which relates only to cities of over 125,000 population ; and at the time of its enactment the “ latest ’ ’ official census population of Albany was over 125,000 and the amendments were then appropriate to article 52.
Thus both the original article 52 provision affecting Albany in 1950 (L. 1950, ch. 762) and the 1970 amendments made by chapter 462 were enacted at times when the “ latest ’ ’ census population was in excess of 125,000. Although some -of the provisions of chapter 462 projected forward to 1971, they must be deemed to have been contingent on a continuance of the city in the class of cities of over 125,000 inhabitants to which all the provisions of article 52 and all the 1970 amendments related.
It was suggested by appellant on the argument that chapter 492 repealed chapter 462 and the court seems right in holding there was not a repeal. The two chapters are consistent. The provisions of chapter 462 did not become inoperative at the end of 1970 because they were repealed; they became inoperative because those provisions along with other provisions of article 52 relating to the city school district of Albany were affected by promulgation of “ the latest federal census” bringing the Albany district into a statutory classification of “ every city ” of less than 125,000. And chapter 492, delaying the transition until July 1, 1971, made it manifest that the transition became effective after that date ‘ ‘ notwithstanding any contrary provision of the education law, or of any general, special or local law ’ ’.
It is significant that chapter 492 deals with classification according to Education Law article number and not by section number or specific reference to cities by name. It is addressed to school districts governed by ‘ ‘ article fifty-two ” and continues that status temporarily. That the function of this 1970 statute is to suspend the declassification from article 52 for a short time is thus indisputable. This is what the statute says in plain terms. And the resulting transition into article 51 coverage of all districts of cities of less than 125,000 after July 1 is logically inescapable.
*220 Therefore it seems to follow that the school district of the City of Albany, now less than 125,000 population, is governed by the provisions of article 51 in the same manner as all other school districts in cities of that population class.
The immediate controversy involves the time of the election of the school board. If chapter 462 continues to apply the school board election becomes part of a general election. Albany would thus be the only city in the State of less than 125,000 where the school board election is part of a general election.
If there is one certain thing about over-all State education policy, it is that school board elections should be kept apart from general political contests. Not only all of the city districts of less than 125,000 have separate school board elections in May (Education Law, § 2502 read with § 2602) but this is the universal rule as to the numerous rural school district elections generally (§ 2002).
It is to be noted also that election of members of the newly created Community School Districts in the City of New York are thus separated from the general election by being held in May (Education Law, § 2590-b).
If the usual party nominations are not permitted in school board elections the joinder of the school election with the general political party contests at the same time and on the same voting machines creates problems of special difficulty for nonpartisan school board elections. A different construction of the Education Law by this court would avoid that difficulty.
The order of the Appellate Division should be reversed and the judgment of Special Term reinstated.
Judges Burke, Breitel, Jasen and Gibson concur with Chief Judge Fuld; Judge Bergan dissents and votes to reverse in a separate opinion in which Judge Scileppi concurs.
Order affirmed.